IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.  13-CR-17-S

STEVEN BENNETT

        Defendant.

---

## PLEA AGREEMENT

The defendant, STEVEN BENNETT and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I.   THE PLEA AND POSSIBLE SENTENCE

1.    The defendant agrees to plead guilty to Counts 1 and 2 of the Second Superseding Indictment which charges:

    a.    In Count 1, a violation of Title 21, United States Code, Section 846 (conspiracy to possess with intent to distribute, and to distribute, 50 grams or more of methamphetamine, and 500 grams or more of a mixture and substance containing cocaine), for which the mandatory minimum term of imprisonment is ten (10) years and the maximum possible sentence is a term of imprisonment of life, a fine of $10,000,000, a mandatory $100 special assessment and a term of supervised release of at least five (5) years and up to life;

    b.    In Count 2, a violation of Title 18, United States Code, Section 1956(h) (conspiracy to commit money laundering), for which the maximum possible sentence is a

term of imprisonment of 20 years, a fine of $500,000, a mandatory $100 special assessment, and a term of supervised release of 3 years.

    c.    The defendant understands that the penalties set forth in this paragraph are the minimum and maximum penalties that can be imposed by the Court at sentencing.

2.    The government agrees that an information pursuant to Title 21, United States Code, Section 851 will not be filed with respect to the charges in the Indictment.

3.    The defendant understands that, if it is determined that the defendant has violated any of the terms and conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 7 years, without credit for time previously served on supervised release.

## II. ELEMENTS AND FACTUAL BASIS

4.    The defendant understands the nature of the offenses set forth in paragraph 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crimes:

**Count 1**:

    a.    that an agreement existed between two or more persons to commit a controlled substance felony offense,

    b.    that the defendant knew of the existence of the agreement, and

    c.    that the defendant intended to participate in the unlawful agreement.

    d.    that at least 50 grams of methamphetamine was reasonably foreseeable to the defendant as being within the scope of the agreement.

**Count 2:**

a. that an agreement existed between two or more persons to commit a violation of Title 18, United States Code, Section 1956, that is, to knowingly conduct financial transactions affecting interstate commerce, which involve the proceeds of specified unlawful activity, namely, the unlawful distribution of cocaine and methamphetamine, with the intent to promote the carrying on of that specified unlawful activity; and

b. that the defendant, knowing the unlawful purpose of the plan, willfully joined in it.

Title 18, United States Code, Section 1956(a)(1)(A)(i) makes it a crime for anyone knowingly to use the proceeds of certain illegal activity to promote the carrying on of certain illegal activity.

## FACTUAL BASIS

5. The defendant and the government agree to the following facts, which form the basis for the entry of the pleas of guilty including relevant conduct:

a. From approximately July 2012, through approximately January 18, 2013, in the Western District of New York and elsewhere, the defendant, STEVEN BENNETT, conspired with Chandra Woods, Phillip Keomongkoun, Nikki Likkard, Guy Burt, Courtney King, Malcolm Bull, Sandra Reyes, and others, to possess with intent to distribute, and to distribute, 50 grams or more of methamphetamine (meth) and 500 grams or more of a mixture and substance containing cocaine. In order to facilitate the distribution of these drugs, BENNETT would often utilize telephone number (323) 377-9342 (target telephone). During this conspiracy, BENNET would mail packages of cocaine and methamphetamine, from California, to Buffalo, New York. As part of this investigation, on December 17, 2012, Agents from the Drug Enforcement Administration (DEA) obtained an intercept Order from United States District Court Chief Judge William M. Skretny, authorizing the interception of calls, and text messages, occurring on BENNETT's telephone 323-377-9342 (target telephone). After that time, drug related phone calls were intercepted, between BENNETT and others, including Chandra Woods, Phillip Keomongkoun, Nikki Likkard, Guy Burt, Courtney King, Malcolm Bull, Sandra Reyes. During many of these phone calls,

the defendant is heard discussing the prices and amounts with these individuals, as well as arranging for the shipping of the drugs, and payment. The defendant was also intercepted arranging for Chandra Woods and Sandra Reyes, to ship the cocaine and/or methamphetamine to addresses in the Buffalo, New York area. BENNETT would also make arrangements with his customers for payment by instructing these individuals where and how to deposit the drug payments and proceeds.

b. On several occasion, during the course of this conspiracy, BENNETT sold cocaine and/or methamphetamine (meth) to a CW, by either providing the drugs to the CW in person, or mailing the drugs, from California, to a Buffalo, New York address provided by the CW. In return, the CW would deposit the payment for the drugs into a specific bank account provided by BENNETT. These payments were usually made in amounts less than $10,000 in an effort to evade the bank transaction recording requirements. In order to accomplish this, BENNETT arranged for the assistance of co-defendant Jessica Lopez, who was an employee of Bank America. Lopez structured the deposits for BENNETT to make it appear that less than $10,000 was being deposited on the same day, when in fact, either BENNETT, or individuals on his behalf, deposited more than $10,000 of drug proceeds. This arrangement facilitated BENNETT's drug operation by allowing him to carry on his drug business from California, into Buffalo, New York.

c. As a further part of the conspiracy, October 16, 2012, BENNETT mailed a package containing 9 ounces of cocaine to 55 Roosevelt Avenue, Buffalo, New York, a house used by co-defendant Nikki Lilliard. This package was seized by the Erie County Sheriff's Department Narcotics Unit, (ECSD) and confirmed, through lab analysis, to contain 249.3 grams of cocaine.

d. As a further part of the conspiracy, on December 7, 2012, BENNETT mailed a package, from California, to 112 Mariner St., Buffalo, New York to the CW. Found inside this package was approximately one ounce of methamphetamine, which was confirmed, through lab analysis, to be 27.3 grams of methamphetamine. On December 13, 2012, after mailing this package of meth, BENNETT sent a text to the CW advising him where to deposit the money for the meth. Specifically, BENNETT advised "325002026592 Tameka Whitfield 3129 w 59th st #3 Los Angeles, ca 90043" The CS knew the bank to be Bank of America. The CW, assisted by Jessica Lopez, then deposited $1500.00 into this account designated by BENNETT.

4

e. As a further part of the conspiracy, on December 27, 2012, BENNETT mailed 2 ounces of meth to the CW. This package was obtained by law enforcement. Lab analysis determined that the package contained 54.5 grams of methamphetamine. The telephone number listed for the package's sender was the defendant's (323-377-9342). Thereafter, BENNETT texted the CW and advised the name and account number for the CW to deposit the money for the drugs. The CW deposited $1500 into this account. On January 3, 2013, the CW paid BENNETT the remaining $1500 in person, at 108 Decker St., Buffalo, New York.

f. As a further part of the conspiracy, on January 3, 2013, while at 108 Decker St., BENNETT sold 9 ounces of cocaine to the CW for $1500. This cocaine was analyzed at a Lab and determined to contain 262.7 grams of cocaine.

g. As further part of the conspiracy, on January 4, 2013, while at 108 Decker St., BENNETT sold 14 grams of methamphetamine to Malcolm Bull.

h. As a further part of the conspiracy, on January 8, 2016, BENNETT instructed Chandra Woods to mail a package containing 9 ounces of cocaine to 8 Forestal, Ave., Buffalo, New York. This package was seized by law enforcement, analyzed by a lab, and determined to contain 249.3 grams of cocaine.

i. As a further part of the conspiracy, on January 18, 2013, the defendant was arrested at ~~580 Niagara~~ [108 Decker St.] St., Buffalo, New York. During the arrest, approximately 1.5 ounces of cocaine was found in the residence. This cocaine, which belonged to the defendant, was analyzed by a lab and determined to contain 42.69 grams of cocaine. In addition, 81.5 grams of methamphetamine that belonged to BENNETT was also found in the residence.

j. Converting the cocaine and methamphetamine, referred to above, to marijuana, utilizing the Drug Equivalency Table, at least **3,000 kilograms** of marijuana but less than **10,000 kilograms** of marijuana is the amount involved in the defendant's relevant conduct encompassed in a plea to Counts 1 and 2 of the Second Superseding Indictment which could be readily proven by the government against the defendant.

### III. SENTENCING GUIDELINES

6.  The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

7.  The government and the defendant agree that Guidelines §§ 2D1.1(a)(5) and 2D1.1(c)(4), 2S1.1(a)(1), and 2S1.1(b)(2)(B) apply to the offenses of conviction and provide for a base offense level of **34**.

### SPECIFIC OFFENSE CHARACTERISTICS
### U.S.S.G. CHAPTER 3 ADJUSTMENTS

8.  The government and the defendant agree that the following specific offense characteristic does apply:

   a.  The 4 **level** upward adjustment of Guidelines § 3B1.1(a) (aggravating role in the offense).

### ADJUSTED OFFENSE LEVEL

9.  Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offenses of conviction is **38**.

### ACCEPTANCE OF RESPONSIBILITY

10.  At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of **35**.

## CRIMINAL HISTORY CATEGORY

11. It is the understanding of the government and the defendant that the defendant's criminal history category is **III**. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the pleas of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

12. It is the understanding of the government and the defendant that, with a total offense level of **35** and criminal history category of **III**, the defendant's sentencing range would be a term of imprisonment of **210** to **262** months, a fine of **$20,000** to **$10,000,000**, and a period of supervised release of **5** years. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the minimum and maximum penalties set forth in paragraph 1 of this agreement.

13. The government and the defendant agree to the Sentencing Guidelines calculations set forth in this agreement and neither party will advocate or recommend the application of any other Guideline, or move for any Guidelines departure, or move for or recommend a sentence outside the Guidelines, except as specifically set forth in this agreement. A breach of this paragraph by one party will relieve the other party of any agreements made in this plea agreement with respect to sentencing motions and

recommendations. A breach of this paragraph by the defendant shall also relieve the government from any agreements to dismiss or not pursue additional charges.

14. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the pleas of guilty based on the sentence imposed by the Court.

## IV. STATUTE OF LIMITATIONS

15. In the event the defendant's pleas of guilty are withdrawn, or convictions vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any other criminal offense involving or related to unlawful possession, manufacture, distribution or importation of controlled substances and money laundering which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty pleas or vacating of the convictions becomes final.

## V. GOVERNMENT RIGHTS AND RESERVATIONS

16. The defendant understands that the government has reserved the right to:

   a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.    respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.    modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

d.    allocute at sentencing consistent with the terms of this agreement.

17.    The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VI.   APPEAL RIGHTS

18.    The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶12, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

19.    The defendant understands that by agreeing to not collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the

future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

20. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶12, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VII. TOTAL AGREEMENT AND AFFIRMATIONS

21. This plea agreement represents the total agreement between the defendant, STEVEN BENNETT, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

JAMES P. KENNEDY, JR.
Acting United States Attorney
Western District of New York

BY: _____
JOEL L. VIOLANTI
Assistant U.S. Attorney

Dated: August 14, 2017

I have read this agreement, which consists of 11 pages. I have had a full opportunity to discuss this agreement with my attorney, Brian Melber, Esq. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____
STEVEN BENNETT
Defendant

_____
BRIAN MELBER., ESQ.
Attorney for the Defendant

Dated: August 14, 2017

Dated: August 14, 2017